IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 1:22-CR-00041 |
| | : | |
| v. | : | (Judge Neary) |
| | : | |
| COREY GREEN | : | (Filed Electronically) |

**DEFENDANT'S SENTENCING MEMORANDUM**

**I.      INTRODUCTION**

Corey Green's decision to plead guilty saved valuable governmental and judicial resources. In so doing, Mr. Green accepted responsibility for his actions, sparing the government and the Court significant time, expense and uncertainty associated with litigating an indictment which charges hundreds of incidents spanning over a decade. But for his guilty plea, the government may not have been able to prove all of Mr. Green's conduct.

Your Honor should accept the parties' plea agreement under Rule 11(c)(1)(C) and impose 24 months' imprisonment and two years of supervised release because: (1) Mr. Green's guilty plea obviated the need for a multi-week jury trial and/or a protracted sentencing, (2) he is a non-violent offender who poses no danger to community, and (3) the §3553(a) factors favor such a sentence.

The instant writing addresses pending objections to the Presentence Report ("PSR") regarding the denial of an adjustment for acceptance of responsibility, the

proper loss amount that should be used to compute the advisory range, and why Your Honor should accept the parties' plea agreement.

## II.  ARGUMENT

### A.  Mr. Green's guilty plea outweighs any violation of his conditions of release and accordingly, he should receive a 3-level decrease for acceptance of responsibility.

The Sentencing Guidelines incentivize defendants to plead guilty by providing for the possibility of a 3-level decrease in the offense level. U.S.S.G. § 3E1.1. A 2-level decrease is warranted where a sentencing judge finds that "the defendant clearly demonstrates acceptance of responsibility for the offense." U.S.S.G. § 3E1.1(a). The defendant bears the burden of proving entitlement to this adjustment. *See id., United States v. Muhammad*, 146 F.3d 161, 167 (3d Cir. 1998). And if the defendant qualifies for the 2-level decrease, the government may motion for an additional level because the defendant's change of plea has preserved governmental resources by avoiding preparation for trial. *See* U.S.S.G. § 3E1.1(b).

When a sentencing judge finds that "the defendant clearly demonstrates acceptance of responsibility for his offense" a reduction is warranted. U.S.S.G. § 3E1.1(a). The Application Notes of the Guidelines provide further direction, stating that entry of a guilty plea constitutes "significant evidence of acceptance of

responsibility." U.S.S.G. § 3E1.1 cmt. n. 3.[1] However, evidence of a plea "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.* For example, a court should consider voluntary termination from criminal conduct or associations, voluntary surrender to authorities and post-offense rehabilitative efforts. U.S.S.G. § 3E1.1 cmt. n. 1. Accordingly, the Court must assess the nature of Mr. Green's infractions against his guilty plea.

In denying a reduction for acceptance, the Probation Office only focuses on Mr. Green's new arrest for Offering to Commit Prostitution (which has not resulted in a conviction), his failure to report same and unauthorized travel. (PSR ¶ 5); *see* (Addendum to the Presentence Report). In denying "acceptance," the PSR fails to take into consideration Mr. Green's otherwise positive adjustment to pretrial supervision.

Aside from the above infractions, Mr. Green adjusted well to pretrial supervision. Mr. Green was arrested for the offenses of conviction on February 1, 2022, and was detained until July 18, 2022, when following a detention hearing, he was released. (PSR ¶ 5). Except for a speeding infraction, Mr. Green was compliant until October 2, 2025, when he was charged by authorities in Florida

---

[1] The Third Circuit permits deference to the guideline commentary to determine whether a defendant has accepted responsibility. *See United States v. Mercado*, 81 F.4th 352, 359-61 (3d Cir. 2023) (affording deference to the commentary to determine whether the acceptance of responsibility guideline applies to conduct after the plea was entered).

with the new offense. The other violations alleged—failure to report the new arrest and unauthorized travel—relate to the offense levied in Florida.

### i. Mr. Green maintained employment

For the three years and two months leading up to the new arrest, Mr. Green was employed for most of the time at Travel Traxx as a bus driver. (PSR ¶¶ 67-68).

### ii. Mr. Green has been drug free

Mr. Green submitted drug-free urines when tested by the Probation Office. (PSR ¶ 65).

### iii. Mr. Green has been compliant on home detention

On November 21, 2025, a bail violation hearing was held due to the alleged infractions of Mr. Green's pretrial release. Following the hearing, he was placed on home confinement with location monitoring and Mr. Green has been compliant. (PSR ¶ 5).

Mr. Green is presumed innocent of the new Florida offense. However, it is undisputed that he failed to report the arrest and that he traveled from North Carolina, his home state, to Florida, without permission. These infractions which occurred during a three-year span should not negate the 3-level decrease to which he is entitled for pleading guilty.

**B. Your Honor should reject the Probation Office's unvetted calculation of the loss amount and adopt the parties' joint recommendation contained within the plea agreement.**

In the final PSR, the Probation Office set the guideline range at 37 to 46 months. Mr. Green objects to the guideline calculations because the Probation Office includes a loss amount of $111,728.46 (8-level increase) which exceeds the amount agreed to in the plea agreement of between $40,000 and not more than $95,000 (6-level increase). (PSR ¶¶ 2, 21). As a result, the adjusted offense level in the PSR is increased by two levels and stands at 19. (PSR ¶ 19). Beyond the agreement, no adequate basis exists to back the Probation Office's loss calculation.

In support of its decision, the Probation Office relies upon a transactional spreadsheet from Certegy Payment Solutions which "appears reliable and accurate[.]" *see* (Addendum to the Presentence Report). It then attempts to shift the burden to establish the loss amount when it writes that, ". . .the defendant has not presentenced evidence to undermine the reliability of Certegy's records or demonstrate the reported losses are inaccurate or not attributable to him." *Id.* The Probation Office misapprehends the law as the government, and not the defendant, has the burden of proof for guideline enhancements. *See Untied States v. Chandler*, 104 F.4th 445, 449 (3d Cir. 2024).

When the government takes the position that an enhancement is not readily provable, the parties often negotiate in the plea agreement that the enhancement is

not applicable. Such is the case here. And unless the government intends to violate the plea agreement, Your Honor should sustain Mr. Green's objection, as there is insufficient evidence to support a higher loss amount.

    **C. To recognize the governmental and judicial resources that were saved, Your Honor should accept the parties' plea agreement under Rule 11(c)(1)(C).**

The Indictment charges bank fraud-related conduct that occurred from September 22, 2011, through January 13, 2022, in the Middle District of Pennsylvania and "elsewhere." However, only seven transactions totaling $2,293.81 occurred in this district. *See* (Doc. 1, Indictment). The PSR provides more detail about the particulars: Mr. Green executed the scheme hundreds of times in numerous jurisdictions, including in Pennsylvania, New Jersey, Virginia, Maryland, Georgia, Texas, Florida and New York, among other states. (PSR ¶ 9). Given the way Mr. Green was charged, the government needed to prove the essential elements of the seven discrete transactions. To hold him accountable for the remainder of the hundreds of other incidents, the government would need to establish that his actions constitute Relevant Conduct under Section 1B1.3 of the Sentencing Guidelines. And to do so this would require the government to establish by a preponderance of the evidence that Mr. Green participated in hundreds of

6

other incidents.[2] The government may have been able to make the necessary showing, however, it would have taken countless hours to prepare, a massive amount of resources to coordinate witness testimony and at minimum, multiple days (if not weeks) in a sentencing proceeding. Considering these difficulties, the parties arrived at the instant plea agreement.

Congress has provided courts with broad discretion in considering relevant information at sentencing. Under 18 U.S.C. § 3661, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Courts have recognized that a defendant's decision to plead guilty may warrant mitigation beyond the Guidelines' acceptance of responsibility adjustment when it meaningfully conserves governmental and judicial resources. *Cf. United States v. Garcia*, 926 F.2d. 125, 127-128 (2d Cir. 1991) (noting the value of the contribution made by a defendant whose plea of guilty also leads to the disposition of all charges against his co-defendants, resulting in the resolution of a substantial case "pending in the seriously over clogged dockets of the . . .Courts of the United

---

[2] Contrary to the belief of the Probation Office, a submission of a spreadsheet from Certegy Payment Solutions seems insufficient to establish Mr. Green's sentencing accountability.

States); *United States v. Agu*, 949 F.2d 63, 67 (2d Cir. 1991) (Cooperation with the judicial system can, in appropriate circumstances, warrant a departure").

Taken together, these authorities reflect that where, as here, a defendant pleads guilty to a factually and/or legally complex set of offenses—thereby sparing the government and the Court substantial resources—such conduct may be a proper mitigating factor under 18 U.S.C. §3553(a). Accordingly, Your Honor should accept the parties' plea agreement even though the advisory range in the PSR exceeds the parties' "11(c) agreement."

### D. Mr. Green's individual characteristics militate in favor of Your Honor accepting the parties' plea agreement and imposing a sentence of 24 months' imprisonment.

Corey Green, 39, resides in Harrisburg, North Carolina, with his mother, Aileen Jones and his stepfather, Christopher Jones. (PSR ¶ 58). Mr. Green enjoys a close relationship with his mother and stepfather, who are both retired. Notwithstanding their bond, Mr. Green's mother and stepfather are displeased with many of his choices which have led him to commit crimes.

Unfortunately, Mr. Jones is plagued by multiple sclerosis and requires a wheelchair. Mr. Green's mother serves as his primary caregiver and Mr. Green also helps to care for his stepfather.



*Christopher and Aileen Jones circa 2024.*

Mr. Green's biological father, Howard Green, was a father in name only, and provided no meaningful financial or emotional support during his childhood. *Id.* Indeed, Howard Green still owes child support even though Corey Green is almost 40. Mr. Green's father has played an outsized and negative role in his life. And put more accurately, the absence of a loving and attentive father has plagued Mr. Green for years. Though his father lived only an hour from where Mr. Green was raised, he spent little time engaging with him. This was particularly painful for Mr. Green when he observed his father lavish his half-siblings with gifts, attention and praise. As well, Mr. Green was sexually victimized between the ages of 8 and 10 by his father's girlfriend's son while he visited him. As Mr. Green explains, his father would pick him up for weekend visits and then spend little to no time with him.

9

Rather, his father focused on his other children and their interests. Given this callous manner of parenting, Mr. Green struggled during his formative years with feelings of invisibility, inadequacy and worthlessness. To boot, and despite his size (Mr. Green is now 6'5" and 230 pounds), he lacked athleticism that helped his half-brother, Malcolm Green, play college basketball at Appalachian State. And being homosexual as Mr. Green is has never been received well by his father.

  The sexual abuse only stopped when Mr. Green refused to visit his father. And then Mr. Green became rebellious as a teen, taking his mother's car without her permission and engaging in attention seeking behavior which cast him in a negative light. Life in high school was no better for Mr. Green as he endured bullying due to his meager clothes, sexuality and physical appearance.

  Mr. Green was first arrested at 17 though that charge was dismissed. (PSR ¶ 47). And then a steady stream of arrests followed when he was 18, 19, 23, 25 through his present age. However, Mr. Green's only convictions are for non-violent, low-level offenses: Obtaining Property by False Pretense, Solicit Possession of Stolen Vehicle, driving-related infractions, Conspiracy-Retail Theft, Receiving Stolen Property and Larceny. (PSR ¶¶ 34-40). Though it's difficult to decipher from the PSR, it appears that Mr. Green has only spent a handful of months in jail for only some of his minor convictions. Consequently, a sentence

called for by the plea agreement—at least 24 months but not more than 37 months' imprisonment—jibes with the principles of incremental punishment.

## III. CONCLUSION

Given the minor nature of Mr. Green's criminal history and the non-violent nature of the instant offenses, Your Honor should accept the parties' plea agreement and sentence him to no more than 24 months' imprisonment with two years of supervised release.

Respectfully submitted,

Date: January 14, 2026

*/s/ Ari D. Weitzman*
Ari D. Weitzman, Esquire
Asst. Federal Public Defender
Attorney ID# PA81927
100 Chestnut Street, Third Floor
Harrisburg, PA  17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*ari_weitzman@fd.org*
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, Ari D. Weitzman, Esquire, Assistant Federal Public Defender, do hereby certify that I served a copy of the foregoing **Defendant's Sentencing Memorandum**, via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

    Christian T. Haugsby, Esquire
    United States Attorney's Office
    *christian.haugsby@usdoj.gov*

                                                Respectfully submitted,

Date:  January 14, 2026

                                                <u>*/s/ Ari D. Weitzman*</u>
                                                Ari D. Weitzman, Esquire
                                                Asst. Federal Public Defender
                                                Attorney ID# PA81927
                                                100 Chestnut Street, Third Floor
                                                Harrisburg, PA  17101
                                                Tel. No. 717-782-2237
                                                Fax No. 717-782-3881
                                                *ari_weitzman@fd.org*
                                                *Attorney for Defendant*